**Frank J. WOODROW, Jerry Trudell, Harold Whittle, William Trudell, and Brian Wilson, Plaintiffs–Appellants,**

**v.**

**WILDLIFE COMMISSION, Department of Natural Resources, State of Colorado, Defendant–Appellee.**

No. 08CA0753.

Colorado Court of Appeals, Div. IV.

Feb. 19, 2009.

Victor T. Roushar, Montrose, Colorado, for Plaintiffs–Appellants.

No Appearance for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

Plaintiffs, Frank J. Woodrow, Jerry Trudell, Harold Whittle, William Trudell, and Brian Wilson, seek judicial review of the one-year suspension of their hunting and fishing license privileges, imposed by defendant, the Wildlife Commission. We affirm.

During hunting season, plaintiffs drove across private property adjacent to public lands open for hunting, while in possession of hunting firearms and licenses, and dressed in "hunter safety orange." They were charged with hunting on private property without permission in violation of section 33–6–116, C.R.S.2008, a conviction of which results in the assessment of twenty license suspension points. Ultimately, each plaintiff pleaded guilty to a reduced charge of criminal trespass in violation of section 18–4–504(1), C.R.S.2008, and the original charges were dismissed.

Section 33–6–106, C.R.S.2008, authorizes the Commission to suspend a license if the licensee "[h]as been convicted of any violation of title 18, C.R.S., *that was committed while hunting, trapping, fishing, or engaging in a related activity* ... [which violation] total[s] twenty or more points." § 33–6–106(1)(c), C.R.S.2008 (emphasis added). A sanction may not be imposed by the Commission without notice to a licensee and an opportunity to show cause why the privileges should not be suspended. *See* § 33–6–106(3)–(4), C.R.S.2008. The Commission is statutorily authorized to delegate its authority to suspend wildlife license privileges to a hearing officer, whose decision may be appealed to the Commission. § 33–6–106(7), C.R.S.2008.

A duly appointed hearing officer, after a show cause hearing, imposed a one-year license suspension on each plaintiff. Plaintiffs appealed this determination to the Commission, which upheld the hearing officer's decision. Plaintiffs then sought review in district court pursuant to the Administrative Procedure Act (APA). § 24–4–106, C.R.S.2008. The district court, in a well-reasoned order, affirmed the Commission's decision. This appeal followed.

## I. Section 33–6–106 is Readily Understandable by Persons of Ordinary Intelligence

We disagree with plaintiffs' contention that the term "related activity," as set forth in section 33–6–106(1)(c), is unconstitutionally vague.

The term is contained within the phrase "hunting, trapping, fishing, or engaging in a related activity." § 33–6–106(1)(c). "Related" is a commonly understood word, defined as "to have connection, relation, or reference" and being "connected; associated." *American Heritage Dictionary* 1472 (4th ed.2000). By placing "related activity" immediately after "hunting, trapping, [and] fishing," the General Assembly plainly described acts falling within the ambit of the statute, that is as relevant here, acts associated with or connected to hunting, but not the actual act of hunting.

We conclude, as did the trial court, that a person of ordinary intelligence would know that if his criminal conviction "has a close and logical connection to [his] hunting, trapping, or fishing activity, such conduct falls within the ambit of potential license suspension under section 33–6–106." *See*

*Smith v. Charnes,* 728 P.2d 1287, 1290 (Colo.1986)(statute violates due process only if it "forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess as to its meaning and differ as to its application"); *Parrish v. Lamm,* 758 P.2d 1356, 1368 (Colo. 1988) (ordinary and accepted meaning of statutory terms should be used "unless they have acquired a technical meaning through legislative definition or judicial construction"); *E–470 Pub. Highway Auth. v. Revenig,* 91 P.3d 1038, 1041 (Colo.2004) (burden of proving statute unconstitutional beyond a reasonable doubt is on person challenging the statute).

## II. Proceedings Initiated and Decided by Same Person Were Proper

Plaintiffs argue that, because the hearing officer initiated suspension proceedings over which he subsequently presided, their rights to procedural due process were violated. We disagree.

■ "[T]he combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Withrow v. Larkin,* 421 U.S. 35, 58, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Leonard v. Bd. of Dirs.,* 673 P.2d 1019, 1024 (Colo.App. 1983)(U.S. Supreme Court "has never held a system of combined functions to be a violation of due process"). Furthermore, as the trial court noted, in an administrative setting, procedural due process requires only adequate notice and the opportunity to be heard, and both were provided here. *See, e.g., Mountain States Tel. & Tel. Co. v. Dep't of Labor & Employment,* 184 Colo. 334, 338, 520 P.2d 586, 588 (1974).

■ Although plaintiffs heavily rely on the portion of section 24–4–105(6), C.R.S.2008, of the APA, which requires separation of prosecutorial and judging functions, that provision is only applicable when the statutory scheme requires both a prosecutor and a hearing examiner. *See Stream v. Heckers,* 184 Colo. 149, 152–53, 519 P.2d 336, 337–38 (1974). However, the statutory scheme for the suspension of hunting and fishing license privileges provides for a nonadversarial, show cause proceeding, which does not require the participation of a prosecutor. *See* § 33–6–106(3) (licensee is provided "an opportunity to appear and show cause why his or her license privileges should not be suspended").

■ Moreover, even if it were applicable here, section 24–4–105(6) is not violated simply because a hearing officer is a member of the relevant administrative agency. *See Cordova v. Mansheim,* 725 .P.2d 1158, 1160–61 (Colo.App.1986)(that hearing officer was responsible to director of department of revenue did not improperly combine judicial and prosecutorial roles).

## III. The Hearing Officer Properly Relied upon the Citing Officer's Reports

■ We also disagree with plaintiffs' contention that, because the hearing officer relied upon hearsay reports prepared by the citing officer, there was insufficient evidence to support the order of suspension.

■ An agency decision may be set aside on the ground that it is unsupported by any competent evidence. *Bd. of Assessment Appeals v. Colo. Arlberg Club,* 762 P.2d 146, 151 (Colo.1988). " 'No competent evidence' means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Cruzen v. Career Serv. Bd.,* 899 P.2d 373, 375 (Colo.App.1995).

■ However, administrative hearings need not comply with the strict rules of evidence. *Colo. Dep't of Revenue v. Kirke,* 743 P.2d 16, 20 (Colo.1987). The standard is "whether the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs." *Fueston v. City of Colorado Springs,* 713 P.2d 1323, 1326 (Colo.App.1985); *see* § 24–4–105(7), C.R.S.2008. There is no requirement that only nonhearsay evidence be introduced at an administrative license revocation hearing. Indeed, administrative determinations may be based completely on hearsay evidence. *Kirke,* 743 P.2d at 22.

Here, we agree with the trial court that the citing reports, the authenticity and contents of which were not contested, were evi-

dence reasonable and prudent persons commonly accept as having probative value. *See id.; Colo. Div. of Revenue v. Lounsbury*, 743 P.2d 23, 25 (Colo.1987).

Furthermore, although the reports and their location were available to plaintiffs, the record shows they chose not to obtain them. *See Ryan v. Charnes*, 738 P.2d 1175, 1178 (Colo.1987) (state not required to deliver to a passive party all potentially useful information). Similarly, plaintiffs had the right to confront and cross-examine the citing officer, but elected not to do so. *Id.* (right to confront and cross-examine, ensured by a statutory subpoena provision, provided adequate safeguards of licensee's due process rights).

## IV. Plaintiffs' License Suspensions Are Not Barred by Principles of Double Jeopardy

■ Because their license suspensions were based on the same facts as the criminal charges against them, plaintiffs assert that the suspensions were barred by the prohibition against imposition of multiple punishments for the same offense set forth in the Double Jeopardy Clause of the Fifth Amendment. We disagree.

■ The Double Jeopardy Clause prohibits multiple criminal punishments for the same act. *See Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). To determine whether a particular subsequent sanction subjects an offender to double jeopardy, a reviewing court must first consider whether the legislature intended a criminal or civil sanction. *People v. Howell*, 64 P.3d 894, 899 (Colo.App.2002) (citing *Hudson*, 522 U.S. at 99, 118 S.Ct. 488). Here, the provisions governing the suspension of hunting and fishing license privileges plainly are civil in nature. *See Femedeer v. Haun*, 227 F.3d 1244, 1249 (10th Cir.2000) ("Legislative intent to enact a nonpunitive measure is ascertainable from the simple fact that the legislature placed the statute in the civil code as opposed to the criminal code.").

■ A second sanction, even if civil, can implicate the Double Jeopardy Clause if the statutory scheme is primarily punitive. *Howell*, 64 P.3d at 899; *see also Simpson v.*

*Bouker*, 249 F.3d 1204, 1212 (10th Cir.2001). However, the Clause is not implicated by the imposition of a civil sanction that primarily serves a remedial purpose. *See Deutschendorf v. People*, 920 P.2d 53, 59 (Colo.1996) ("if a civil sanction serves a primarily remedial purpose, and does not exclusively promote deterrence or retribution, it is not punishment and does not implicate the Double Jeopardy Clause"); *People v. Olson*, 921 P.2d 51, 56 (Colo.App.1996). Thus, to determine whether double jeopardy bars a second, civil proceeding, the court must look to the primary purposes served by the sanction. *See Deutschendorf*, 920 P.2d at 59; *Olson*, 921 P.2d at 53 ("Whether double jeopardy bars a second proceeding requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve.").

■ Here, it is quite apparent from the plain language of the wildlife statute that the primary purpose of the civil sanction of hunting or fishing license suspension is remedial. Wildlife within Colorado, unless privately owned, belongs to the state. § 33–1–101(2), C.R.S.2008. It is the policy of the state to preserve and manage wildlife for the public interest, § 33–1–101(1), C.R.S.2008. In its sovereign capacity, the state has the power to restrict the taking of game by the public. *Hornbeke v. White*, 20 Colo.App. 13, 24, 76 P. 926, 929 (1904).

Furthermore, the statute refers to the acquisition of hunting, trapping, or fishing licenses as a privilege, and the activities permitted by that license as the exercise of benefits. § 33–6–106(1) & (6), C.R.S.2008; *see Deutschendorf*, 920 P.2d at 60–61 (observing that most regulatory license penalty proceedings serve remedial, rather than punitive purposes; a "sanction which constitutes the revocation of a privilege voluntarily granted is 'characteristically free of the punitive criminal element'" (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938))).

Similarly, the statute reserves the sanction of license suspension only to those who, by committing serious or repeated infractions, present a significant threat to wildlife. *See Olson*, 921 P.2d at 51 (license revocation

proceedings generally are recognized as public safety measures rather than punishment); *see also Campbell v. State,* 176 Colo. 202, 211, 491 P.2d 1385, 1390 (1971) (revocation of driver's license intended for protection of the public, not punishment of the driver).

Accordingly, we conclude that the primary goal of the General Assembly in providing for the civil sanction of license suspension was not the imposition of punishment on the licensee but the remedial purpose of protecting the public's interest in the state's wildlife. Therefore, plaintiffs' license suspensions did

not constitute multiple punishments in violation of the Double Jeopardy Clause.

The order is affirmed.

Judge ROVIRA * and Judge RULAND * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.