2018 CO 1

**DEPARTMENT OF REVENUE, DIVISION OF MOTOR VEHICLES,** Petitioner/Cross-Respondent,

v.

**Brian ROWLAND, Respondent/Cross-Petitioner.**

**Supreme Court Case No. 16SC303**

Supreme Court of Colorado.

January 8, 2018

Attorneys for Petitioner/Cross-Respondent: Cynthia H. Coffman, Attorney General, Frederick R. Yarger, Solicitor General, Glenn E. Roper, Deputy Solicitor General, Laurie Rottersman, Senior Assistant Attorney General, Grant T. Sullivan, Assistant Solicitor General Denver, Colorado

Attorneys for Respondent/Cross-Petitioner: Frechette Law Office, Franz P. Frechette, Nederland, Colorado

Attorneys for Amicus Curiae Colorado Criminal Defense Bar: Tiftickjian Law Firm, P.C., James Nechleba, Jay M. Tiftickjian Denver, Colorado

Attorneys for Amicus Curiae Colorado District Attorneys' Council: Colorado District Attorneys' Council, Thomas R. Raynes, Jennifer R. Knudsen Denver, Colorado

Han Ng, LLC, Han Ng, Fraser, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶1 This case requires us to interpret section 42-2-126(8)(c), C.R.S. (2017), which provides that in driver's license revocation proceedings, a hearing officer "may consider evidence contained in affidavits," so long as those affidavits are sworn to under penalty of perjury. After Respondent/Cross-Petitioner Brian Rowland was cited for drunk driving, he argued at his license revocation hearing that section 42-2-126(8)(c) barred the hearing officer from considering an analyst's report on his blood alcohol content ("BAC") because the report was an affidavit and the analyst had not signed it under penalty of perjury. The court of appeals ultimately held that (1) section 42-2-126(8)(c) requires all written statements from non-law enforcement sources to be presented in affidavit form and sworn to under penalty of perjury before they can be considered as evidence in driver's license revocation hearings, but (2) BAC test results may be admitted at a driver's license revocation hearing through a law

enforcement officer's testimony even if the laboratory report on which the officer's testimony is based is inadmissible. We granted certiorari on both issues.[1] We reverse the court of appeals as to issue one and, as a result, decline to reach the second issue.

### I. Facts and Procedural History

¶2 In February 2014, a police officer pulled Rowland over after the officer observed him driving at inconsistent speeds and weaving over the yellow dividing line and the fog line. During the stop, the officer observed that Rowland had bloodshot and watery eyes, unsteady balance, slurred speech, and the smell of alcohol on his breath. After Rowland unsatisfactorily performed several roadside sobriety tests, the officer arrested him for driving under the influence.

¶3 In accordance with Colorado's implied consent law, section 42-4-1301.1, C.R.S. (2017), the officer gave Rowland a choice to take a breath test or a blood test to determine his BAC. Rowland chose to undergo a blood test. At the police station, an EMT drew a sample of Rowland's blood while the officer watched. Then, the officer delivered the sample to ChemaTox Laboratory, a private, state-certified laboratory, for blood alcohol analysis. About two weeks later, the ChemaTox analyst who tested Rowland's blood sent a written BAC test report to the Boulder County Sheriff's Office that indicated that Rowland's BAC was 0.158 at the time of his arrest, almost twice the legal limit of 0.08. See § 42-2-126(3). The ChemaTox analyst signed the BAC test report, but he did not sign it under penalty of perjury. As required by the license revocation statute, § 42-2-126(5)(a), the officer then submitted an affidavit to the Motor Vehicle Division of the Colorado Department of Revenue ("Department") that reported Rowland's BAC as

0.158 at the time of his arrest. The Department revoked Rowland's license for nine months pursuant to section 42-2-126(3)(a)(I)(A). .

¶4 Rowland requested and received an administrative hearing to challenge the Department's revocation of his driver's license. Evidence admitted at the hearing included the officer's affidavit and testimony, as well as the BAC test report from ChemaTox Laboratory. Rowland's counsel objected to the admission of both the BAC test report and the officer's testimony about the results in the report. The hearing officer overruled his objections and affirmed the revocation, finding that the Department had proved by a preponderance of the evidence that Rowland drove with a BAC in excess of 0.08.

¶5 Rowland appealed the hearing officer's decision to the district court. The district court rejected the hearing officer's conclusion that the BAC test report was admissible, holding that it was an affidavit that failed to meet the requirements of section 42-2-126(8)(c).[2] Nevertheless, the district court affirmed the revocation because it concluded that the test results, though not the BAC test report itself, were admissible through the officer's testimony and that there was sufficient evidence in the record to uphold the revocation order.

¶6 Rowland again appealed, and the court of appeals reversed and remanded. The court of appeals agreed with the district court that the hearing officer erred in admitting the report as evidence because it found that the BAC test report was an affidavit that did not meet the statutory requirements of section 42-2-126(8)(c). Rowland v. Dep't of Revenue, 2016 COA 40, ¶¶ 19–28, 410 P.3d 635. Specifically, the court of appeals held that "other than testimony presented at the hearing, if

---

**1.** We granted certiorari to review the following issues:

1. Whether section 42-2-126(8)(c), C.R.S. (2016), requires all written statements from non-law enforcement sources to be presented in affidavit form and sworn to under penalty of perjury before they can be considered as evidence in driver's license revocation hearings.

2. [REFRAMED] Whether BAC test results may be admitted at a driver's license revo-

cation hearing through a law enforcement officer's testimony, even if the laboratory report on which the officer's testimony is based is inadmissible.

**2.** Section 42-2-126(8)(c) requires affidavits from non-law enforcement sources to include the affiant's home or work address and phone number, and to be dated, signed, and sworn to by the affiant under penalty of perjury.

the department offers evidence from a non-law-enforcement source, the evidence must be presented in affidavit form to be admitted at the hearing." Id. at ¶ 19. However, like the district court, the court of appeals held that the officer's testimony reporting the BAC test results was independently admissible. Id. at ¶¶ 29–36. Nonetheless, the court of appeals concluded that it could not determine from the record "whether, or to what extent, the hearing officer relied on the inadmissible BAC test report itself in reaching his decision." Id. at ¶ 37. The court of appeals thus reversed the district court's judgment with directions to remand the case to the hearing officer to determine whether the hearing officer would have reached the same revocation determination without the improper admission of the BAC test report. Id. at ¶ 28. The Department and Rowland both filed petitions for a writ of certiorari, which we granted.

## II. Standard of Review

¶7 The proper construction of statutes is a question of law that we review de novo. Francen v. Colo. Dep't of Revenue, 2014 CO 54, ¶ 8, 328 P.3d 111, 114. When construing a statute, we ascertain and give effect to the General Assembly's intent, reading applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts. Id. When a term is not defined in a statute and the statute is unambiguous, we give effect to the statute's plain and ordinary meaning and look no further. Id.

## III. Analysis

¶8 We must determine whether section 42-2-126(8)(c) requires all written statements from non-law enforcement sources to be presented in affidavit form and sworn to under penalty of perjury before they can be considered as evidence in driver's license revocation hearings. The statute sets forth the procedures for a driver's license revocation hearing as follows:

> The department shall consider all relevant evidence at the hearing, including the testimony of any law enforcement officer and the reports of any law enforcement officer that are submitted to the department. The

report of a law enforcement officer shall not be required to be made under oath, but the report shall identify the law enforcement officer making the report. The department may consider evidence contained in affidavits from persons other than the respondent, so long as the affidavits include the affiant's home or work address and phone number and are dated, signed, and sworn to by the affiant under penalty of perjury. The affidavit need not be notarized or sworn to before any other person.

§ 42-2-126(8)(c) (emphasis added). Rowland claims that section 42-2-126(8)(c) requires all written statements from non-law enforcement sources, including the ChemaTox BAC test report, to be presented in affidavit form and sworn to under penalty of perjury before they can be considered as evidence in driver's license revocation hearings. We disagree for three reasons. First, the plain language of section 42-2-126(8)(c) does not require BAC test reports to be presented in affidavit form. That subsection requires affidavits to be dated, signed, and sworn to under penalty of perjury, but the BAC report is not an affidavit. Second, our interpretation of section 42-2-126(8)(c) is consistent with the rest of the statute, whereas Rowland's interpretation brings subsection (8)(c) into conflict with subsections (6)(a), (7)(e), and (8)(e). Finally, our interpretation is consistent with Colorado's Administrative Procedure Act ("APA"), § 24-4-105, C.R.S. (2017), and our precedents.

### A. Plain Language of Section 42-2-126(8)(c)

¶9 The plain language of section 42-2-126(8)(c) does not require all written statements from non-law enforcement sources to be presented in affidavit form and sworn to under penalty of perjury before they can be considered as evidence in driver's license revocation hearings. Specifically, no section of the revocation statute expressly requires all written reports to be sworn to under penalty of perjury or to meet any other affidavit requirements. Section 42-2-126(8)(c) states that the Department "may consider evidence contained in affidavits from persons other than the respondent, so long as the affidavits include the affiant's home or work address and phone number and are dated, signed,

and sworn to by the affiant under penalty of perjury." This language does not require <u>all evidence</u> from non-law enforcement personnel to appear in sworn affidavits; rather, it simply provides that <u>if the evidence is in the form of an affidavit</u>, that affidavit must meet certain requirements. Thus, subsection (8)(c)'s requirements are triggered only when someone other than a police officer or the respondent submits an affidavit.

¶10 This reading requires us to determine whether the BAC test report in this case was an affidavit. We conclude that it was not. The revocation statute does not define the term "affidavit." Rowland argues that the BAC test report is an affidavit under <u>People v. Anderson</u>, 828 P.2d 228 (Colo. 1992), which held that an affidavit is "a signed, written statement, made under oath before an authorized officer, in which the affiant vouches that what is said is true." <u>Id.</u> at 231 (quoting <u>Otani v. Dist. Court</u>, 662 P.2d 1088, 1090 (Colo. 1983)). Applying that definition here, the court of appeals held that the BAC test report is an affidavit—a signed, written statement—because, according to <u>Black's Law Dictionary</u>, a "statement of fact" is "[a] declaration that asserts or implies the existence or nonexistence of a fact," and the BAC test report asserts the fact "that Rowland's BAC was 0.158." <u>Rowland</u>, ¶¶ 24–25. Because it concluded that the BAC test report is a "written statement" that asserts a fact, the court of appeals held that it is an affidavit by a non-police officer, meaning it must meet the affidavit requirements of subsection (8)(c). <u>Id.</u> at ¶ 27.

¶11 We disagree. Regardless of how laboratory reports are treated in other contexts, in reading section 42-2-126(8) as a whole, we conclude that the General Assembly did not intend for the Department to categorize BAC test reports as affidavits. In subsection (8)(d), the General Assembly grants hearing officers the authority to "receive and consider any relevant evidence necessary" to perform their duties, giving them broad discretion to consider all types of evidence. In subsection (8)(e), the General Assembly sets out criteria that must be met "[w]hen an analysis of the licensee's BAC is considered at a hearing." In addition to assuming that hearing officers

will consider an analysis of the licensee's BAC, the General Assembly created a presumption in favor of BAC analyses conducted on behalf of law enforcement:

> If the evidence offered by the respondent shows a disparity between the results of the analysis done on behalf of the law enforcement agency and the results of an analysis done on behalf of the respondent, and a preponderance of the evidence establishes that the blood analysis conducted on behalf of the law enforcement agency was properly conducted by a qualified person associated with a laboratory certified by the department of public health and environment using properly working testing devices, there shall be a presumption favoring the accuracy of the analysis done on behalf of the law enforcement agency if the analysis showed the BAC to be 0.096 or more.

§ 42-2-126(8)(e)(II). Neither subsection (8)(d) nor (8)(e) includes a requirement that BAC test reports be sworn to under penalty of perjury. The General Assembly gave hearing officers broad discretion to hear all types of evidence and presumed that BAC test reports for both law enforcement and the respondent could be considered by the Department.

¶12 Thus, the plain language of section 42-2-126(8)(c) does not require all written statements from non-law enforcement sources to be presented in affidavit form. Specifically, it does not require BAC test reports to be presented in affidavit form and sworn to under penalty of perjury before they can be considered as evidence in driver's license revocation hearings. The affidavit requirements in subsection (8)(c) are meant to apply to written statements with no indicia of reliability, such as witness statements. By contrast, respondents can challenge the veracity of evidence like BAC test reports by questioning the qualifications of the analyst, the certifications of the laboratory, or the quality of the testing devices.

## B. Other Sections of the Revocation Statute

¶13 Our holding also accords consistent, harmonious, and sensible effect to all of the

revocation statute's parts, whereas Rowland's interpretation results in internal inconsistencies. Specifically, by preventing hearing officers from considering as evidence any written statement from persons who are not law enforcement unless that statement is in the form of an affidavit, Rowland's interpretation brings subsection (8)(c) into conflict with subsections (6)(a), (7)(e), and (8)(e).

¶14 Subsection (6)(a) distinguishes between affidavits and other "relevant documents":

> Upon receipt of an affidavit of a law enforcement officer and the relevant <u>documents</u> required by [subsection (5)(a)] of this section, the department shall determine whether the person's license should be revoked.... The determination shall be based upon the information contained in the affidavit and the relevant documents submitted to the department....

(Emphasis added.) Similarly, subsection (7)(e) states that the Department is required to notify a licensee who requests a hearing that, if a law enforcement officer is not required to appear at the hearing, the <u>documents</u> referenced in (6)(a) and (5)(a) "will be used at the hearing" <u>in addition</u> to an affidavit prepared and submitted by the non-appearing law enforcement officer. § 42-2-126(7)(e)(III). Finally, as mentioned above, in subsection (8)(e) the General Assembly created a presumption in favor of BAC analyses conducted on behalf of law enforcement, suggesting that the General Assembly expected hearing officers to review BAC reports. § 42-2-126(8)(e). Rowland's interpretation would prevent hearing officers from considering written statements from non-police officers as evidence if they were not sworn to under penalty of perjury, a position inconsistent with each of these subsections which reference other "documents" and BAC test reports. Our holding that the revocation statute does not require all written statements—specifically BAC test reports—from non-law enforcement sources to be presented in affidavit form before they can be considered as evidence in driver's license revocation hearings promotes harmony among these subsections.

## C. Prior Case Law, the APA, and Due Process Protections

¶15 Finally, both the APA and this court's precedents support our interpretation of section 42-2-126(8)(c). The APA applies to license revocation proceedings "to the extent that it is consistent with subsections (7), (8), and (9)." § 42-2-126(11). In cases where it applies, the APA directs:

> The rules of evidence and requirements of proof shall conform, to the extent practicable, with those in civil nonjury cases in the district courts. However, when necessary to do so in order to ascertain facts affecting the substantial rights of the parties to the proceeding, <u>the person so conducting the hearing may receive and consider evidence not admissible under such rules if such evidence possesses probative value commonly accepted by reasonable and prudent men in the conduct of their affairs.</u>

§ 24-4-105(7) (emphasis added); see Colo. Dep't of Revenue v. Kirke, 743 P.2d 16, 21 (Colo. 1987) (applying this standard in a license revocation proceeding). The fact that evidentiary rules are relaxed in license revocation proceedings further suggests that the General Assembly did not intend to subject BAC test reports to the affidavit requirements of section 42-2-126(8)(c).

¶16 Additionally, Colorado courts have historically affirmed the admission of laboratory BAC reports in revocation hearings. See Hancock v. State, 758 P.2d 1372, 1376 (Colo. 1988) (affirming the admission of a ChemaTox report in a revocation hearing under section 42-2-122.1, the revocation statute in place in 1988); Colo. Dep't of Revenue v. McBroom, 753 P.2d 239, 242 (Colo. 1988) (holding that intoxilyzer test results are admissible at a revocation hearing even if a testing officer does not testify regarding his certification to administer the test); Kelln v. Colo. Dep't of Revenue, 719 P.2d 358, 360 (Colo. App. 1986) (holding that BAC test reports from both government and private laboratories "have probative value" and "are admissible in a driver's license revocation hearing"). Although these decisions preceded the addition of the affidavit language to subsection (8)(c), nothing in that language demonstrates an intent to change the long-

standing norm of considering BAC reports as evidence in revocation hearings.

¶17 Rowland also argues that the hearing officer's decision to consider the BAC test report violated his right to due process under the U.S. and Colorado Constitutions. It is true that even in administrative hearings, "the rules of evidence cannot be so relaxed as to disregard due process of law and fundamental rights." Kirke, 743 P.2d at 21. The U.S. Supreme Court has held that "[t]he matter comes down to the question of the procedure's integrity and fundamental fairness." Richardson v. Perales, 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (upholding the use of hearsay reports in social security disability hearings). In Kirke, we held that the use of hearsay evidence to establish one of the elements in a license revocation proceeding does not violate due process guarantees so long as the hearsay evidence "is sufficiently reliable and trustworthy, and as long as the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs."[3] Kirke, 743 P.2d at 21.

¶18 Here, the admission of the BAC test report satisfied the due process protections of the U.S. and Colorado Constitutions because the report was sufficiently reliable and trustworthy and possessed probative value commonly accepted by reasonable and prudent people. Blood tests that are completed in substantial compliance with the rules and regulations of the Colorado Department of Public Health and Environment ("CDPHE") are considered reliable. See Miller v. Motor Vehicle Div., 706 P.2d 10, 11–12 (Colo. App. 1985). The hearing officer found that ChemaTox Laboratory tested Rowland's blood within substantial compliance with the rules and regulations of the CDPHE for evidentiary blood testing. Specifically, the hearing officer

found that ChemaTox Laboratory is a CDPHE certified facility, the testing was completed within two hours of the time of driving, and a proper chain of custody was established for the transport and testing of the sample. Evidence in the record supports this conclusion.

¶19 Finally, as the district court and court of appeals correctly observed, Rowland could have subpoenaed the analyst and examined him regarding any discrepancies between the BAC test report and the officer's affidavit and testimony, see § 24-4-105(7), but Rowland did not do so. Nor did he present any evidence that called the veracity of the BAC test report into question. Therefore, the hearing officer properly admitted the BAC test report into evidence at Rowland's license revocation hearing because it was sufficiently probative and reliable.

## IV. Conclusion

¶20 For the reasons stated in this opinion, we hold that the BAC test report in this case did not have to meet the affidavit requirements of section 42-2-126(8)(c) in order for the hearing officer to consider its contents. Because we conclude that the report itself was admissible, we decline to reach the issue of whether the officer could independently testify to its contents. Accordingly, we reverse the judgment of the court of appeals and we remand the case to that court with instructions to affirm the hearing officer's revocation of Rowland's driver's license.

---

**3.** The defendant in Kirke lost his license pursuant to section 42-2-122.1, the license revocation statute in place at the time. However, the same

relaxed evidentiary provisions of the APA that applied in Kirke also apply in this case.